# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROSALYN R. P.,                    )
                                  )
           Plaintiff,             )
                                  )
     v.                           )        1:25CV725
                                  )
FRANK J. BISIGNANO,               )
Commissioner of Social            )
Security,                         )
                                  )
           Defendant.[1]          )


## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rosalyn R. P., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB").  (Docket Entry 2.)  The Commissioner has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Commissioner's

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brief); Docket Entry 14 (Plaintiff's notice declining to file reply)). For the reasons that follow, the Court will remand this matter for further administrative proceedings.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 191-95), alleging a disability onset date of February 3, 2023 (see Tr. 191, 194). Upon denial of that application initially (Tr. 69-82, 95-99) and on reconsideration (Tr. 83-94, 106-13), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 114-15). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 40-68.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 7-30.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 188-90, 353-54), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2027.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since February 3, 2023, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: rheumatoid arthritis (RA), fibromyalgia, chronic low back pain with sciatica, obesity, anxiety, and depression.
>
> . . .

2

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except she must be able to alternate position between sitting and being on her feet up to twice per hour and can remain on task in all positions and during all transitions. She can frequently operate hand controls, push, pull, reach, handle, and finger with the bilateral upper extremities. She can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally work around unprotected heights, moving mechanical parts, extreme cold, extreme heat, and vibration. She can understand[,] remember and carry[]out simple tasks and instructions that can be learned in 30[]days or less, use judgment to make simple, work-related decisions in jobs that require no more than frequent interaction with supervisors and occasional interaction with co-workers and the general public.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

3

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from February 3, 2023, through the date of th[e ALJ's] decision.

(Tr. 12-25 (bold font, footnote, and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Even given those limitations, the Court will remand this case for further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

4

Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]."  Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)."  Id. at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

other work." <u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." <u>Id.</u> at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<i>e.g.</i>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

### B.  Assignment of Error

Plaintiff's first and only assignment of error maintains that "[t]he ALJ's RFC determination as to pushing, pulling, reaching, and operating hand controls was not supported by substantial evidence because she failed to properly evaluate opinion evidence supporting more restrictive limitations and improperly discredited Plaintiff's subjective complaints of pain from fibromyalgia and rheumatoid arthritis."  (Docket Entry 11 at 3.)  In particular,

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

Plaintiff faults the ALJ for finding "not persuasive at all" (id. at 9 (citing Tr. 22)) the opinions of consultative medical examiner Marcia P. Love, PA-C ("PA-C Love"), that Plaintiff would have "moderate limitations with lifting, carrying, and postural activities" (id. (referencing Tr. 438)), because "the term 'moderate' was not defined" (id. (quoting Tr. 22)). In Plaintiff's view, "[t]he ALJ cannot feign uncertainty as to the definition of 'moderate' when she used the term in her psychiatric review technique and it was defined in the listings she reviewed at [s]tep [t]hree [of the SEP]." (Id. at 10 (citing Tr. 14-15, and Foster v. Commissioner of Soc. Sec. Admin., No. 8:20CV4319, 2022 WL 10199084, at *12-13 (D.S.C. Jan. 13, 2022) (unpublished), recommendation adopted, 2022 WL 391561 (D.S.C. Feb. 9, 2022) (unpublished)).) Plaintiff additionally contends that "[t]he ALJ similarly erred by selectively only rejecting [the state agency medical consultants'] opined hand controls, pushing, pulling, and reaching limitations because they were 'not consistent with the record'" based on "'only slightly limited' back range of motion and 'normal' range of motion in her other joints." (Id. (purporting to quote Tr. 23).) According to Plaintiff, "the ALJ . . . failed to consider that [the consultants'] opined operating hand controls, pushing, pulling, and reaching limitations were consistent with PA-C Love's opinion that Plaintiff had moderate limitations with lifting, carrying, and postural limitations" (id. at 11), and, thus, accuses the ALJ of

9

"'simply cherry-pick[ing] facts that support[ed] a finding of nondisability while ignoring evidence that point[ed] to a disability finding'" (id. at 11-12 (brackets omitted) (quoting Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017))).

Plaintiff further argues that:

> the ALJ's notations of normal exam findings in her evidence summary and her reliance on normal and "only slightly" abnormal exam findings to reject [the state agency medical consultants'] opined operating hand controls, pushing, pulling, and reaching limitations suggest that the ALJ relied primarily on the lack of objective findings to discredit Plaintiff's subjective complaints of pain.

(Id. at 12-13 (quoting Tr. 23).) In that regard, Plaintiff notes that "'ALJs may not rely on objective medical evidence (or the lack thereof) - even as just one of multiple factors - to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence.'" (Id. at 13 (quoting Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83, 97 (4th Cir. 2020)); see also id. (citing Hultz v. Bisignano, 162 F.4th 111, 122 (4th Cir. 2025), as case in which "ALJ failed to apply the correct legal standard address [sic] in *Arakas* because the decision heavily relied on objective medical criteria to assess the claimant's fibromyalgia").) Plaintiff deems the ALJ's above-described errors as "harmful" (id.), because 1) "Plaintiff was advanced age as of the alleged onset date" (id. (citing Tr. 83)), and, thus, "[g]iven her age, education, and experience and the

10

[VE]'s testimony that there were no transferrable skills from [Plaintiff's] past relevant work, she would have been found disabled under [Rule] 202.06 of the Medical[-]Vocational Guidelines if the ALJ [had] properly evaluated Plaintiff's subjective complaints of pain and the opinion evidence" (id. (citing Tr. 65, and 20 C.F.R. Pt. 404, Subpt. P, App'x 2)), and 2) "the [VE] testified that an individual would need to be able to at least frequently perform [pushing, pulling, and/or reaching in any direction] at any level of exertion [for jobs to exist in significant numbers in the national economy]" (id. (referencing Tr. 64)). For the following reasons, Plaintiff's contentions ultimately establish reversible error by the ALJ.

**1. Opinion Evidence Regarding Pushing, Pulling, Reaching, and Operating Hand Controls**

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 191-95)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence, see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. See 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any

11

medical opinion(s) . . ., including those from [a claimant's] medical sources"). Instead, an ALJ must determine and "articulate in [the] . . . decision how <u>persuasive</u> [he or she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). Moreover, when a medical source provides more than one opinion, the ALJ can evaluate the persuasiveness of such opinions "together in a single analysis" and need not articulate how he or she considered those opinions "individually." 20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an opinion, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ <u>must</u> address those two factors in evaluating the persuasiveness of an opinion. 20 C.F.R. § 404.1520c(b)(2).[6] The ALJ must discuss the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion, 20 C.F.R. § 404.1520c(c)(3)-(5) — <u>only</u> when the ALJ finds two or more opinions about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3).

---

[6] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ discussed the findings from PA-C Love's consultative medical examination (see Tr. 22), and then provided the following analysis of the persuasiveness of PA-C Love's opinions:

> [PA-C Love] opined that [Plaintiff] had "moderate" limitations in lifting[,] carrying and postural activities. The term "moderate" is not defined here, or in [the SSA's] regulations, to determine [Plaintiff's] actual ability to lift and carry in terms o[f] pounds, or [the] frequency with which she can perform postural movements. While some limitations are supported by this exam and consistent with the treating records, this opinion for "moderate" limitations is not persuasive.

(Id. (emphasis added) (internal parenthetical citation omitted).) Plaintiff challenges the ALJ' rejection of PA-C Love's opinion that Plaintiff would have "moderate limitations with lifting, carrying, and postural activities" (Docket Entry 11 at 9 (referencing Tr. 438)), because "the term 'moderate' was not defined" (id. (quoting Tr. 22)). In that regard, Plaintiff notes that the ALJ considered whether Plaintiff's rheumatoid arthritis met or equaled "Listing 14.09 for inflammatory arthritis" (id.), and points out that the introductory section for the listings for Immune System Disorders "explains that the term [sic] 'moderate' and 'marked' are part of the five-point scale of severity" (id. at 10 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00.I.5)), which "is the same exact five-point scale that was used by the ALJ when completing the psychiatric review technique at [s]tep [t]hree [of the SEP]" (id.

13

(citing Tr. 14-15)).[7]  According to Plaintiff, "[t]he ALJ cannot feign uncertainty as to the definition of 'moderate' when she used the term in her psychiatric review technique and it was defined in the listings she reviewed at [s]tep [t]hree [of the SEP]."  (Id. (citing Foster, 2022 WL 10199084, at *12-13).)  Those contentions fail for two reasons.

First, although Plaintiff correctly observes that "the term 'moderate' . . . [is] part of the five-point scale of severity" used to determine whether an impairment qualifies as severe and/or meets or medically equals the criteria of certain listings at steps two and three of the SEP (id. (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00.I.5)), the regulations do not provide a definition of the term "moderate" that explains how that term should apply to a claimant's physical RFC, i.e., his or her maximum ability to engage in exertional activities such as lifting, carrying, pushing, pulling, sitting, standing, and walking, and non-exertional

---

[7] Although Plaintiff asserts that the ALJ should have considered whether Plaintiff's fibromyalgia met or medically equaled "Listing 14.09 for inflammatory arthritis" (Docket Entry 11 at 9 (citing SSR 12-2p, Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *6 (July 25, 2012) ("SSR 12-2p") ("At step 3, . . . [the ALJ] determine[s] whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment."))), Plaintiff fails to develop that argument further (see id. at 9-10).  For example, Plaintiff did not argue that her fibromyalgia actually met or medically equaled the criteria of Listing 14.09D or any other listing.  (See id.)  Accordingly, the Court need not address that argument.  See Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) (deeming issue "waived because [the plaintiff] fail[ed] to develop [an] argument to any extent in its brief"); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)).

14

activities such as postural and manipulative movements, see 20 C.F.R. § 404.1545. Thus, the ALJ did not err by rejecting PA-C Love's "moderate" limitations on Plaintiff's ability to lift, carry, and perform postural movements (see Tr. 438), because 1) PA-C Love did not define the term "moderate" (see id.), and 2) the SSA's regulations did not define the term "moderate" in the context of a physical RFC to permit the ALJ "to determine [Plaintiff's] actual ability to lift and carry in terms o[f] pounds, or [the] frequency with which she can perform postural movements" (Tr. 22).[8]

Second, even if the ALJ had erred in rejecting PA-C Love's moderate limitations in lifting, carrying, and postural movements,

---

[8] Plaintiff's reliance on Foster misses the mark. (See Docket Entry 11 at 10.) In that case, the plaintiff's treating physician "completed a mental RFC assessment" and rated the plaintiff as having mild, moderate, marked, and extreme limitations in various mental work-related activities. Foster, 2022 WL 10199084, at *8. The ALJ found the physician's opinions "not persuasive," in part, as "undermined by the vague terms used like 'mild,' 'moderate,' 'marked,' and 'extreme[, because t]h[o]se terms lack[ed] the specificity needed to determine the frequency with which the [plaintiff] can perform the function." Id. (brackets omitted) (comma placement altered). The court noted feeling "perplexed by the ALJ's finding that . . . the 'terms lack[ed] the specificity needed to determine the frequency with which the [plaintiff] can performj the function[,]'" because the physician "was evaluating [the p]laintiff's limitations in the paragraph B criteria found in Listing 12.00 Mental Disorders" and "[e]ven the ALJ used the terms 'mild,' 'moderate,' 'marked,' and 'extreme' when making his findings regarding the paragraph B criteria." Id. at *12-13. Indeed, when assessing mental RFC, the state agency psychological consultants utilize a five-point scale including "Not Significantly Limited," "Moderately Limited," Markedly Limited," "No Evidence of Limitation in This Category," and "Not Ratable on Available Evidence." Programs Operations Manual System ("POMS"), § DI 24510.060B.2.c ("Mental Residual Functional Capacity Assessment") (emphasis added). Thus, in Foster, it did not make sense for the ALJ to find the term "moderate" vague, when the physician used that term as part of a mental RFC assessment, i.e., an assessment in which state agency psychological consultants regularly use that term. In contrast, here, PA-C Love used the term "moderate" to describe lifting, carrying, and postural limitations (see Tr. 438), a context in which, as discussed above, the term "moderate" lacks a definition, see 20 C.F.R. § 404.1545.

15

Plaintiff has not shown how that error prejudiced her. Plaintiff complains that the ALJ improperly evaluated Plaintiff's ability to engage in "pushing, pulling, reaching, and operating hand controls" (Docket Entry 11 at 3 (emphasis added)), but fails to explain why the ALJ's RFC, which limited Plaintiff to frequent, but not constant, operation of hand controls, pushing, pulling, and reaching (see Tr. 15), did not sufficiently account for a "moderate" limitation in those activities (see id. at 3-14). See Jennifer Lee W. v. Berryhill, No. 5:18CV64, 2019 WL 1243759, at *5 (N.D.N.Y. Mar. 18, 2019) (unpublished) ("[A] moderate limitation is not inconsistent with a finding that an individual can engage in frequent, but not constant activity."). Moreover, PA-C Love's "moderate" limitation applied to "lifting, carrying, and postural movements" (Tr. 438 (emphasis added)), the latter of which include climbing, balancing, stooping, crouching, kneeling, and crawling, see Social Security Ruling 85-15, Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *6-7 (Jan. 1, 1985) ("SSR 85-15"), and, thus, PA-C Love did not find that Plaintiff had moderate limitations in pushing, pulling, reaching, or operating hand controls. Indeed, reaching constitutes a manipulative movement, see id. at *7, and PA-C Love opined that Plaintiff's impairments caused her to have only "mild" limitation in manipulative movements (Tr. 438).

16

The ALJ additionally evaluated the persuasiveness of the opinions of the state agency medical consultants, including their opinions regarding Plaintiff's abilities to push, pull, and reach, as follows:

> The [s]tate agency medical consultants reviewed [Plaintiff]'s medical evidence available at the initial and reconsideration stages and opined that she could perform light exertion work, except she could only occasionally push and pull with the bilateral upper and lower extremities; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and could never climb ladders, ropes, or scaffolds. She could occasionally reach overhead with the bilateral upper extremities. She can frequently perform handling, fingering, and feeling with the bilateral hands. She must avoid concentrated exposure to extreme cold, wetness, and vibration. She must avoid even moderate exposure to extreme heat and workplace hazards. [The consultants] supported their opinion with references to the record; however, some of their opinions are not consistent with the medical records. For example, occasional pushing, pulling, and reaching is not consistent with the record. While [Plaintiff] had tender points noted, her consultative examinations [sic] (which is the only one with specific findings) indicates her range of motion in her back is only slightly limited and she had no [range of motion] limitations in other joints. However, frequent use of the hands is supported and consistent with her painful and tender finger and wrist joints and 4/5 strength in the hands at the [consultative medical examination], supporting some, but not significant, reduction in abilities. Light exertion work with the ability to alternate position, frequent use of the hands, and occasional postural movements is consistent with the tenderness and slight limitations in strength and range of motion noted in the record.

17

(Tr. 23 (internal parenthetical citation omitted) (emphasis added).)[9]

Plaintiff first attacks the ALJ's rejection of the consultants' opinions that Plaintiff could only occasionally push, pull, operate hand controls, and reach overhead (see Tr. 77-78, 89) as "not consistent with the record" (Tr. 23), based on "'only slightly limited' back range of motion and 'normal' range of motion in her other joints." (Docket Entry 11 at 10 (purporting to quote Tr. 23).) According to Plaintiff, "the ALJ . . . failed to consider that [the consultants'] opined operating hand controls, pushing, pulling, and reaching limitations were consistent with PA-C Love's opinion that Plaintiff had moderate limitations with lifting, carrying, and postural limitations." (Id. at 11 (referencing Tr. 438).) That contention falls short. As discussed above, PA-C Love's moderate limitations involved lifting, carrying, and postural movements (see Tr. 438), the latter of which include climbing, balancing, stooping, kneeling, crouching, and crawling, see SSR 85-15, 1985 WL 56857, at *6-7, and, therefore, PA-C Love did not offer opinions regarding Plaintiff's ability to push, pull,

_____

[9] Although the ALJ did not expressly discuss (or reject) the state agency medical consultants' opinion that Plaintiff could occasionally operate hand controls (see Tr. 23; see also Tr. 77-78, 89), the ALJ's RFC permits Plaintiff to "frequently operate hand controls" (Tr. 15), and, thus, the Court can reasonably infer that the ALJ rejected the consultants' opined limitation to occasional hand control operation for the same reasons the ALJ declined to adopt the consultants' limitations to occasional pushing, pulling, and reaching overhead (see Tr. 23).

18

operate hand controls.  Regarding reaching, a manipulative movement, <u>see</u> <u>id.</u> at *7, PA-C Love found only mild limitation, which did not harmonize with the consultants' occasional limitations in overhead reaching (<u>see</u> Tr. 78, 89).

Plaintiff next maintains that the ALJ:

> failed to acknowledge that the evidence cited by [the consultants] as support (history of [rheumatoid arthritis], fibromyalgia, and [carpal tunnel syndrome]; "paraspinal muscle tenderness"; "[d]ecreased [range of motion] [t]horacolumbar [s]pine and [a]nkles/[f]eet") was consistent with Plaintiff's primary care and rheumatology records, which noted diagnoses of rheumatoid arthritis and fibromyalgia, history of carpal tunnel syndrome, and exam findings of general and joint tenderness, tender points at her wrists, hands, hips, knees, ankles, and feet, and ankle swelling.

(<u>Id.</u> (referencing Tr. 77-78, 89, and citing Tr. 375, 478, 491).) In Plaintiff's view, "[t]he ALJ was required to explain *what is* and what is not 'persuasive' evidence of [Plaintiff]'s allegedly disabling medical condition" (<u>id.</u> (italics in original) (citing <u>Stephen R. v. O'Malley</u>, No. 21-2292, 2024 WL 3508155, at *4 (4th Cir. July 23, 2024) (unpublished))), and Plaintiff argues that the ALJ's "cherry-picking of the evidence did not meet th[at] standard" (<u>id.</u> (citing <u>Lewis</u>, 858 F.3d at 869)).

19

That argument fares no better. As the Commissioner aptly contends:

> Plaintiff unconvincingly argues that the ALJ should have found the state agency opinions consistent with . . . the primary care records that showed diagnoses for rheumatoid arthritis, fibromyalgia, carpal tunnel [syndrome] and findings of tenderness. [A] diagnosis alone does not establish disability. Functional limitations - not diagnosis - are the focus in determining disability. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)). . . . [T]he ALJ considered the evidence Plaintiff claims [the ALJ] ignored. The ALJ found Plaintiff's rheumatoid arthritis and fibromyalgia severe, considered findings of tenderness, and found Plaintiff had upper extremity limitations (Tr. 15-23). Plaintiff does not point to evidence the ALJ should have considered but did not. Rather, she argues the ALJ should have interpreted the evidence differently. This is contrary to the standard of review. *See Craig*, 76 F.3d at 589 (the reviewing court does not substitute its judgment for that of the ALJ).

(Docket Entry 13 at 12-13 (first internal parenthetical citation omitted).) Plaintiff's contentions thus do not demonstrate cherry-picking by the ALJ.

## 2. Evaluation of Plaintiff's Subjective Symptom Reports

Lastly, Plaintiff faults the ALJ for "never explain[ing] why Plaintiff's subjective complaints regarding pain due to fibromyalgia and rheumatoid arthritis were not credible" (Docket Entry 11 at 12), and argues that:

> the ALJ's notations of normal exam findings in her evidence summary and her reliance on normal and "only slightly" abnormal exam finding to reject [the state agency medical consultants'] opined operating hand controls, pushing, pulling, and reaching limitations suggest that the ALJ relied primarily on the lack of

20

> objective findings to discredit Plaintiff's subjective
> complaints of pain.

(Id. at 12-13 (quoting Tr. 23).)  In that regard, Plaintiff notes that "'ALJs may not rely on objective medical evidence (or the lack thereof) - even as just one of multiple factors - to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence.'"  (Id. at 13 (quoting Arakas, 983 F.3d at 97); see also id. (citing Hultz, 162 F.4th at 122, as case in which "ALJ failed to apply the correct legal standard address [sic] in *Arakas* because the decision heavily relied on objective medical criteria to assess the claimant's fibromyalgia").)

In Arakas, the Fourth Circuit deemed fibromyalgia a "unique" disease, Arakas, 983 F.3d at 97, with "symptoms [that] are entirely subjective," id. at 96, and noted that "physical examinations of patients with fibromyalgia will usually yield normal results — a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions," id. (brackets omitted). The Fourth Circuit thus held that "ALJs may not rely on objective medical evidence (or the lack thereof) – <u>even as just one of multiple medical factors</u> – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia," because "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or

21

limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease," id. at 97 (emphasis added).

Plaintiff's assertion that "the ALJ's notations of normal exam findings in her evidence summary . . . suggest that the ALJ relied primarily on the lack of objective findings to discredit Plaintiff's subjective complaints of pain" in violation of Arakas lacks merit. (Docket Entry 11 at 12-13.) Although the ALJ did discuss many objective findings in her summary recitation of the medical evidence, that recitation did not contain any analysis (let alone a "discredit[ing]") of "Plaintiff's subjective complaints of pain" (Docket Entry 11 at 13). (See Tr. 17-22.) Accordingly, the ALJ's discussion of those objective findings does not, standing alone, violate Arakas.

The lack of analysis of Plaintiff's subjective symptom reports in the ALJ's RFC discussion (see Tr. 16-24), however, lends credence to Plaintiff's complaint that "[t]he ALJ never explained why Plaintiff's subjective complaints regarding pain due to fibromyalgia and rheumatoid arthritis were not credible" (Docket Entry 11 at 12). The ALJ summarized Plaintiff's testimony (see Tr. 16-17), found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (Tr. 17 (emphasis added)), summarized the medical evidence (see Tr. 17-

22

22), analyzed the persuasiveness of the opinion evidence (see Tr. 22-23), and then summarily concluded that Plaintiff's "multiple tender points, including knees, ankles, hips, shoulders, fingers, toes, and wrists and her anxiety, with recent exacerbation in depressive symptoms" supported the RFC (Tr. 24). The ALJ's decision entirely lacks any analysis of Plaintiff's subjective symptom reports, such as an evaluation (as opposed to a mere summary) of her ability to engage in "[d]aily activities," "[t]he location, duration, frequency, and intensity of pain or other symptoms," "[f]actors that precipitate and aggravate the symptoms," "[t]he type, dosage, effectiveness, and side effects of any medication [Plaintiff] takes or has taken to alleviate pain or other symptoms," "[t]reatment, other than medication, [Plaintiff] receives or has received for relief of pain or other symptoms," and "[a]ny measures other than treatment [Plaintiff] uses or has used to relieve pain or other symptoms," Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *7-8 (Oct. 25, 2017) ("SSR 16-3p").

Notably, the United States Court of Appeals for the Fourth Circuit recently remanded a case, in part, based on that same failure by an ALJ, reasoning as follows:

> [A]n ALJ's [RFC] assessment must be based on all the relevant evidence and must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. In addition, the ALJ must also explain how any material

23

> inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The assessment must include a discussion of why reported symptom-related functional limitations and restrictions can and cannot reasonably be accepted as consistent with the medical and other evidence. . . . [A]lthough the ALJ does otherwise provide a lengthy seven-page summary of [the plaintiff]'s medical record, there is very little analysis and discussion within this summary. At the conclusion of this overview, the opinion summarily says, "the above [RFC] assessment is supported by the entirety of the evidence, including the claimant's treatment history, her physical examinations and psychological evaluations, and her own reports regarding her function limitations." It is difficult to discern which records and what facts the ALJ based each of the RFC determinations on. Instead, the Commissioner's brief on appeal has had to conduct this analysis and make these arguments.
>
> But even the Commissioner's brief does not put forth compelling analysis about the symptoms of fibromyalgia. The Commissioner states that the ALJ analyzed [the plaintiff]'s treatment and response to treatment, finding that her fibromyalgia symptoms were successfully managed with prescription medications. This is not quite correct; the ALJ does not analyze but merely summarizes [the plaintiff]'s history of treatment and the corresponding medical notes.

Hultz, 162 F.4th at 122–24 (internal quotation marks, ellipses, brackets, and citations omitted). As in Hultz, the ALJ's failure here to actually analyze Plaintiff's subjective symptom reports precludes the Court from meaningfully reviewing whether substantial evidence ultimately supports the ALJ's pushing, pulling, hand controls, and reaching limitations in the RFC.

Further compounding that error, Plaintiff correctly points out that the ALJ's "reliance on normal and 'only slightly' abnormal exam findings to reject [the state agency medical consultants']

24

opined operating hand controls, pushing, pulling, and reaching limitations suggest[s] that the ALJ relied primarily on the lack of objective findings to discredit Plaintiff's subjective complaints of pain." (Docket Entry 11 at 12-13 (quoting Tr. 23).) In particular, the following analysis of the consultants' opinions runs afoul of Arakas:

> [S]ome of the[ consultants'] opinions are not consistent with the medical records. For example, occasional pushing, pulling, and reaching is not consistent with the record. While [Plaintiff] had tender points noted, her consultative examinations [sic] (which is the only one with specific findings) indicates her range of motion in her back is only slightly limited and she had no [range of motion] limitations in other joints. However, frequent use of the hands is supported and consistent with her painful and tender finger and wrist joints and 4/5 strength in the hands at the [consultative medical examination], supporting some, but not significant, reduction in abilities. Light exertion work with the ability to alternate position, frequent use of the hands, and occasional postural movements is consistent with the tenderness and slight limitations in strength and range of motion noted in the record.

(Tr. 23 (emphasis added).) The above-emphasized language makes clear that the ALJ relied on objective findings such as normal (or near normal) range of motion and strength to discount the consultants' pushing, pulling, hand control, and reaching limitations. Although Plaintiff had two severe impairments that affected her upper extremities, fibromyalgia and rheumatoid arthritis (see Tr. 13), the ALJ's analysis suggests that she included Plaintiff's symptoms from fibromyalgia in her reliance on objective findings, particularly because the ALJ expressly cited to

25

Plaintiff's "tender points" (Tr. 23) - a finding associated with fibromyalgia, see SSR 12-2p, 2012 WL 3104869, at *3. "As the ALJ analyzed Plaintiff's RA[ and] fibromyalgia . . . together and, in doing so, relied on objective medical evidence to discount [the consultants' pushing, pulling, hand controls, and reaching limitations], the [undersigned] cannot rule out the possibility that the ALJ impermissibly relied on objective evidence, even as just one factor, in discounting the intensity, persistence, and limiting effects of Plaintiff's subjective complaints of fibromyalgia pain . . . in violation of Arakas." Cowan v. Kijakazi, No. 1:21CV196, 2022 WL 3446078, at *8 (M.D.N.C. Aug. 17, 2022) (unpublished) (internal quotation marks and parenthetical citations omitted), recommendation adopted, 2022 WL 17831951 (M.D.N.C. Sept. 21, 2022) (unpublished) (Osteen, J).

Plaintiff contends that the ALJ's errors qualify as "harmful" (Docket Entry 11 at 13), because "Plaintiff was advanced age as of the alleged onset date" (id. (citing Tr. 83)), and, thus, "[g]iven her age, education, and experience and the [VE]'s testimony that there were no transferrable skills from [Plaintiff's] past relevant work, she would have been found disabled under [Rule] 202.06 of the Medical[-]Vocational Guidelines if the ALJ [had] properly evaluated Plaintiff's subjective complaints of pain and the opinion evidence" (id. (citing Tr. 65, and 20 C.F.R. Pt. 404, Subpt. P, App'x 2)). However, Rule 202.06 of the Medical-Vocational Guidelines directs

26

a conclusion of "[d]isabled" for individuals of "[a]dvanced age," see 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 202.06, which the regulations define as "age 55 or older," 20 C.F.R. § 404.1563(e). Plaintiff remained in the closely approaching advanced age category (defined as "age 50-54," 20 C.F.R. § 404.1563(d)) throughout the relevant period in this case (see Tr. 24), and Rule 202.14, which applies to individuals, like Plaintiff, in the closely approaching advanced age category with a high school (or more) education and skilled past relevant work with no transferable skills, would direct a conclusion of "[n]ot disabled," 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 202.14.

Plaintiff additionally deems the ALJ's errors "harmful" (id. at 13), because "the [VE] testified that an individual would need to be able to at least frequently perform [pushing, pulling, and/or reaching in any direction] at any level of exertion [for jobs to exist in significant numbers in the national economy]" (id. (referencing Tr. 64)). Indeed, the VE testified that an "individual would need to be able to at least frequently utilize their bilateral upper extremities for . . . pushing and pulling, reaching in all directions and out in front and laterally . . . rather than [on] an occasional basis" in order for "jobs [to] still be available." (Tr. 64.) As such, remand for the ALJ to further evaluate 1) Plaintiff's subjective symptom reports in accordance with SSR 16-3p, and 2) the state agency medical

27

consultants' opinions in accordance with <u>Arakas</u>, could result in the ALJ limiting Plaintiff to less than frequent pushing, pulling, operating hand controls, and reaching, which the VE testified would preclude competitive work (<u>see</u> Tr. 64).

In sum, Plaintiff has established that the ALJ reversibly erred by 1) failing to analyze Plaintiff's subjective symptoms reports in accordance with SSR 16-3p, and 2) relying on objective medical evidence of Plaintiff's fibromyalgia to discount the state agency medical consultants' opinions in violation of <u>Arakas</u>.

### III. CONCLUSION

Plaintiff has established errors warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED**, and that this action is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to include 1) a proper analysis of Plaintiff's subjective symptom reports in compliance with SSR 16-3p, and 2) re-evaluation of the state agency medical consultants' opinions in compliance with <u>Arakas</u>.

      /s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

June 29, 2026

28